Thomson, J.
This suit was brought by the appellee to recover his salary as mining superintendent for the appellant from October 1, 1897, to November 7, 1897, amounting to §205.54. The defendant answered, admitting that the plaintiff performed service for it during the time stated, and averring that the service was rendered under its employment of the plaintiff, as its mining superintendent, at §166.66 per month, from the 7th day of January, 1896, and that he was paid that sum monthly until the 7th day of October, 1897. It was also admitted that the plaintiff’s salary for the month commencing the 7th day of October, 1897, amounting to §166.66, had not been paid, but indebtedness to the plaintiff in any sum was denied. The answer further set forth the appointment on *544 the 11th day of January, 1896, by resolution of the defendant’s board of directors, of the plaintiff, as defendant’s superintendent, with authority to make leases of the defendant’s property on such terms and for such time as he might deem best in the first instance, the leases, however, not to be operative, or take effect, until their submission to, and approval by, Willard Teller, vice president of the defendant, and not to exceed one year until further action by the board; and averred that among the leases made by him was one to James A. Thompson, executed on the 22d day of January, 1896, for a period of one year, under which, without renewal, the plaintiff suffered Thompson to operate until September 8, 1897, and out of which, moneys, amounting in the aggregate to $604.75, came into his hands, for which he failed to account to the defendant. Judgment was prayed for the difference between the moneys alleged to have been retained by the plaintiff, and $166.66, his unpaid salary. The replication denied the retention by the plaintiff of any money belonging to the defendant, and averred that in dealing with the lessee, exacting royalties and adjusting mining expenses, he exercised a discretion with which he was invested by the president and vice president of the defendant.
The plaintiff introduced, in evidence, the following resolution, adopted by its board of directors, at a meeting held on the 11th day of January, 1896: “ On motion of Solomon Turck, it was resolved that the superintendent Wm. D. Arnold, shall be employed to lease the property of the company upon such terms and for such time as shall seem best to him in the first instance, said lease not to be operative, or take effect, until same has been submitted and approved by Willard Teller, the time of such lease not to exceed the period of one year, except upon further action by the board.” The plaintiff also introduced the lease to Thompson, -dated January 22, 1896, and the entries in the books of the defendant relating to that lease. The lease bore the approval of Willard Teller. It reserved a royalty of fifty per cent, of all ore produced, and provided that the cost of blacksmithing, mining timbers and *545 logging, should he borne by the lessee; also that the company should do the tramming at the expense of the lessee, unless the superintendent should otherwise direct. It appears from the book entries that the plaintiff received all the money realized from sales of ore, and settled with the lessee. They show that the total amount received for ore from February 14, 1896, to November 8,1897, was 111,697.71, royalty of fifty per cent of which would be $5,848.55, and that the amount accounted for as royalty during the same period was only $5,413.68. ' They also show that the total amount to which the company was entitled for mining expenses, according to the terms of the lease, was $294.27, and that the total amount received on account of such expenses, was $140.52.
The authority exercised by the plaintiff in the operation of the mine appears from the following testimony of Benjamin C. Catren, a witness called by the plaintiff: “ Mr. Arnold had supervision as to the leases and the working of the property, and the money they could get out of it; and everything that was kept out in the way of royalty or tramming, or otherwise, was done under the direction of Mi’. Arnold, and the money that was paid in under the leases, was also done under Mr. Arnold’s direction, and Mr. Arnold was the only man who was checking against the company’s account at Georgetown, so that of all the morpey that was paid in from ore or other sources went into the bank under the direction of Mr. Arnold, and he was the man that checked it out.” This witness was a bookkeeper under the plaintiff during the time covered by Thompson’s lease. He also testified that he sent monthly reports to the company which were taken from the cash book, and that he was never requested to make a complete report. He said that the reports showed the gross amounts received for ore, and the gross amounts paid out to lessees, but it showed no transaction with any particular lessee, or in relation to any particular lease. There was a number of leases given upon different parts of the mine, and against the objection of the defendant, the court admitted evidence of the royalty reserved in one of those leases other than that before *546 us. This was error. The resolution from which the plaintiff’s authority was derived, empowered him to make leases on such terms as might seem best to him in the first in-' stance, to take effect when approved by Willard Teller. That a less royalty was reserved in another lease than in this, is immaterial. The terms of each lease, whatever they may have been, were fixed by him subject to Mr. Teller’s approval. The terms of this lease were fixed by him, and approved by Mr. Teller; and it is his conduct in respect to this lease, and not his conduct in respect to some other lease that is now in question. The court also, against the defendant’s objection, permitted the plaintiff to testify to conversations between himself and Mr. Teller, occurring after the execution of this lease, having some relation to leases generally, and to. an expression by Mr. Turck, the president of the defendant, after some kind of an examination of the books, to the effect that he was well pleased with everything. According to the witness, Mr. Teller told him to give a Mr. Atkins a reduction of royalty, because the latter complained that it was too high; and also told him to do what he thought was right by lessees, giving them such deductions as he thought best. The court likewise, notwithstanding objection by defendant, admitted a letter from Mr. Turck,- — -to whom addressed does not appear, — in which he said, “ I note all you have to say, and fully approve your plans and management.” The purpose of this evidence was to show that the plaintiff was authorized by Mr. Teller to make concessions to Mr. Thompson, in respect both to royalties and mining expenses, and to show that Mr. Turck was satisfied with what the plaintiff had done in relation to those royalties and expenses. We do not think the evidence tends to establish either of the propositions. It does not show any modification, or Mr. Teller’s consent to any modification, of the Thompson lease ; or that Mr. Turck’s remark, or his statement in his letter, was made- with any knowledge of the facts. Surely Mr. Teller’s loose observations respecting leases genérally, were not equivalent to an authority to the plaintiff to *547 release Thompson from the performance of his covenants. But even if the plaintiff had the countenance of Mr. Teller and Mr. Turck in changing the terms of the lease, it would not- avail him. His authority to make leases was derived not from Mr. Turck or Mr. Teller, but from the hoard of directors, and it was defined and limited by the resolution which conferred it. He was empowered to settle the time and terms of a lease in the first instance, — that is, at the time the lease was made, — subject to Mr. Teller’s approval. When approved, that lease, for that time, and upon those terms, took effect. In respect to time or terms, the authority of the plaintiff and Mr. Teller was exhausted when the lease was approved. The affairs of a corporation are managed by its board of directors; and except by their authority, none of its officers can dispose of its property. The directors of this corporation gave the plaintiff no authority to decide upon the terms of a lease, except “ in the first instance; ” and they gave Mr. Teller no authority to approve any terms except those fixed by the plaintiff “ in the first instance. ” As the original power came from the board of directors, its change or modification must come from the same source, so that unless the board, after the lease was made, authorized the plaintiff to reduce the royalty, or remit the mining expenses, his act in so doing was without effect, notwithstanding what Mr. Teller may have said, or Mr Turck may have done. But no authority from the hoard of directors to make any change in the terms of the lease as it was originally drawn, was shown. The theory of certain of the instructions was that the authority given to Mr. Teller to approve original leases made by the plaintiff, would authorize him to consent to changes which the plaintiff might afterwards make in the terms of the leases. From what we have already said, it will be seen that in our opinion the plaintiff had no authority to agree upon the terms of a lease, except in the first instance. He had no authority to waive those terms afterwards, and what he had no authority to do, Mr. Teller had no authority to approve. The giving of such instructions was error.
*548 The defendant requested the following instruction: “ The court instructs the jury that the fact that the defendant company made no objections to the monthly reports, made by Arnold, the plaintiff, and did not call for further or more specific reports, is not a circumstance to be considered by them, since such reports did not profess to show anything in respect to the question involved in the case, namely, whether plaintiff did or did not retain, out of moneys coming to his hands for the company defendant from James A. Thompson all the money he ought to have retained.” The court, against the objection of the defendant, struck out the word “ since,” and inserted the word “if ” before the words “such reports,” and as thus modified, gave the instruction. The theory of counsel was that the reports were so indefinite as to convey no information to the company of what the plaintiff was doing in the matter of the Thompson lease. We have no sample of the reports before us, but the statements of the only witness, who testified concerning them, would seem to bear out the theory. According to him, they showed only aggregate results of all the leases, and contained nothing from which the transactions relating to this particular lease could be known. We think the instruction should have been given as offered. The contents of the papers were not in dispute, and in leaving it to the jury to find what they were, the court erred.
The following instruction is inexplicable : “ The court instructs the jury that it stands admitted on the part of the defendant that it is indebted to the plaintiff, for salary due. him on the seventh day of November, the sum of $205.54.” A verdict for the plaintiff necessarily followed that statement. But the statement was contrary to the fact. The answer, in terms, denied indebtedness to the plaintiff. In addition to explicit denial, it averred conditions inconsistent with such indebtedness. It did more: it alleged a liability in its favor against the plaintiff, largely exceeding in amount his unpaid salary, and its evidence was in line with its pleading. A denial is not an admission. To say that the plain *549 tiff is indebted to the defendant, does not mean that the defendant owes the plaintiff.
Let the judgment be reversed.

Reversed.